Filed 10/25/21  P. v. Zackery CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H048522 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C2007695) |
| v. | |
| REGINALD CHARLES ZACKERY, JR., | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

Defendant Reginald Charles Zackery, Jr. pleaded no contest to criminal threats (Pen. Code, § 422, subd. (a)),[1] misdemeanor battery on the mother of his child (§ 243, subd. (e)(1)), misdemeanor criminal contempt for violating a protective order (§ 166, subd. (c)(1)), and misdemeanor vandalism (§ 594, subd. (b)(1)).  The trial court placed defendant on probation with various terms and conditions, including that he serve 180 days in county jail and pay victim restitution.

Defendant's appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) that states the case and facts but raises no issue.  We notified defendant of his right to submit written argument on his own behalf within 30 days.  That period has elapsed, and we have received no response from defendant.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

As we will explain, pursuant to *Wende, supra,* 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106 (*Kelly*), we have reviewed the entire record and determined that there is no arguable issue on appeal other than the correction of a clerical error in the clerk's sentencing minutes. Therefore, we will order the correction of the clerk's minutes and affirm the order of probation.

## II. BACKGROUND

Following the California Supreme Court's direction in *Kelly*, *supra*, 40 Cal.4th at page 110, we provide a brief description of the facts and the procedural history of the case.

### A. *The Offenses*

The victim dated defendant off and on for approximately three years, and they had a son together. Although the relationship ended in the summer of 2019, the victim continued to invite defendant to visit her occasionally thereafter.

### 1. The November 2019 incident

For a period of time, the victim lived with her nephew. On the night of November 26, 2019, the nephew returned home and saw the front gate broken. The front door had footprints on it as if someone had tried to break in. There was an alcoholic beverage in a brown bag next to the door.

The nephew entered the residence and called the victim on the phone to confirm that she was not at home. The nephew then heard yelling and loud banging on the front door. He looked out the window and saw defendant. The nephew called the police. He also yelled at defendant, telling him that the victim was not present and to leave. Defendant kept kicking the door, which eventually came off the hinges, and entered the residence. He went to the victim's bedroom. The dispatcher told the nephew that the police were on the way, and that the nephew should exit the residence.

The police arrived and defendant was arrested outside the residence. In addition to the front door being dislodged from the frame, a window next to it was broken and

2

shattered. A neighbor who lived two doors down in the same townhouse complex had heard a male yelling and banging on the door. The neighbor reported hearing the male yell "something similar to, 'I'm going to get you, bitch.' " The neighbor later heard the male say "something similar to, 'I'm going to get you. You can't get away from me.' " In addition to hearing banging and pounding, the neighbor also heard glass breaking. The victim estimated that she paid about $4,700 for repairs.

## 2. The May 2020 incident

A protective order was issued against defendant in February 2020.

On the night of May 23, 2020, defendant came to the victim's residence and told her to open the door. Defendant was angry and aggressive and appeared to be under the influence of something. The victim was scared. She repeatedly told him to go, and she called the police.

Defendant went around to the back of the residence, and the victim heard her sliding glass door break. At some point, the victim saw a stone or a block in her living room where the sliding glass door had shattered. She grabbed her son, who was two months old, and ran to a neighbor's residence. The neighbor "had the door open with a latch on" while the victim asked to be let in.

In the meantime, defendant came out of the victim's residence through her front door. She was still on the phone with the police dispatcher when defendant threw her phone. Defendant threatened her by stating that he would kill her if the neighbors had called the police. The victim was scared.

Defendant grabbed the victim and took her back to her residence. He told her to go to the bedroom and put on clothes so that they could go to a hotel. Defendant was angry and repeatedly hit her in the face with his hands.

The police arrived and knocked on the door. Defendant told the victim to tell the police that everything was "okay." The police located defendant in a bedroom closet, and he was arrested.

3

At the time of the preliminary hearing, the victim had not yet obtained an estimate for repairing the sliding glass door.

## B. *The Charges and Pleas*

In June 2020, defendant was charged by information with first degree burglary (§ 460, subd. (a); count 1), criminal threats (§ 422, subd. (a); count 2), misdemeanor battery on the mother of his child (§ 243, subd. (e)(1); count 3), misdemeanor criminal contempt for violating a protective order (§ 166, subd. (c)(1); count 4), attempting to dissuade a victim or witness from reporting a crime (§ 136.1, subd. (b)(1); count 5), misdemeanor vandalism (§ 594, subd. (b)(1); count 6), and misdemeanor trespassing (§ 602.5, subd. (a); count 7). Counts 1 through 5 were apparently based on the later May 2020 incident, and counts 6 and 7 were based on the earlier November 2019 incident.

In July 2020, defendant pleaded no contest to criminal threats (§ 422, subd. (a); count 2), misdemeanor battery on the parent of his child (§ 243, subd. (e)(1); count 3), misdemeanor criminal contempt for violating a protective order (§ 166, subd. (c)(1); count 4), and misdemeanor vandalism (§ 594, subd. (b)(1); count 6). He entered his pleas with the understanding that he would be placed on probation for three years with various terms and conditions, including 180 days in county jail and "[s]tandard terms and conditions of [domestic violence] probation," along with a *Harvey*[2] waiver and a three-year no-contact order. The remaining counts were submitted for dismissal at the time of sentencing.

## C. *Sentencing*

On August 11, 2020, the trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions, including that he serve 180 days in county jail, perform 40 hours of uncompensated community

---

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

4

service,[3] complete a 52-week certified domestic violence program and pay program participation fees, and complete a 16-week parenting without violence education program. Defendant was granted 161 days of custody credits. The court made a general order of restitution and further ordered that any restitution order be subject to an administrative fee not to exceed 15 percent. The court stayed or waived other fines and fees. The court issued a three-year protective order prohibiting defendant from contacting the victim. The remaining counts were dismissed.

A contested restitution hearing was held on September 28, 2020. The trial court ordered defendant to pay $5,370.01 in restitution to the victim.

**D.** *Appeal*

Defendant filed a timely notice of appeal and request for certificate of probable cause. (Cal. Rules of Court, rule 8.304.) The trial court denied the request for the certificate. We appointed counsel to represent defendant in this court.

### III.    DISCUSSION

Having carefully reviewed the entire record, we conclude that there is no arguable issue on appeal other than the correction of the clerical error in the clerk's sentencing minutes. (*Wende*, *supra*, 25 Cal.3d at pp. 441-443.)

### IV.    DISPOSITION

The order of probation is affirmed. The minutes of the August 11, 2020 sentencing hearing are ordered corrected to reflect that defendant was ordered to perform 40 hours of uncompensated community service.

---

[3] The clerk's minutes of the August 11, 2020 sentencing hearing incorrectly reflect that defendant was ordered to perform only 20 hours of community service. We will order the minutes corrected accordingly.

5

_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:




_____
ELIA, ACTING P.J.




_____
LIE, J.




***People v. Zackery***
**H048522**